UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA GLOECKNER, | 1:12-cv-00935-BAM (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
| v. | |
| DONNY YOUNGBLOOD, | [Doc. 1] |
| Respondent. | |

Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Andrew Jeffrey Fishkin, Esq. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

PROCEDURAL HISTORY

Following a jury trial in the Kern County Superior Court, Petitioner was convicted of possession of methamphetamine with intent to sell in violation of California Health and Safety Code Section 11378. Petitioner was sentenced to two years imprisonment.[1]

Petitioner filed a timely notice of appeal. On August 8, 2011, the California Court of Appeal, Fifth Appellate District affirmed the judgment.

---

[1] On July 5, 2012, Petitioner was released from state custody after having served the remainder of her sentences, on the current offense and two prior drug conviction cases. Upon her release from state custody, she was apparently taken into the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE).

1

On November 2, 2011, the California Supreme Court denied the petition for review.

On September 28, 2011, Petitioner filed a state petition for writ of habeas corpus in the Kern County Superior Court. The petition was denied in a reasoned decision on November 3, 2011.

On December 8, 2011, Petitioner filed a state petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. The petition was summarily denied on February 16, 2012.

On March 13, 2012, Petitioner filed a petition for review in the California Supreme Court. After directing Respondent to file an answer to the petition, the Court summarily denied the petition on May 9, 2012.

Petitioner filed the instant federal petition for writ of habeas corpus on June 8, 2012. Respondent filed an answer to the petition on October 4, 2012, and Petitioner filed a reply on October 25, 2012.

STATEMENT OF FACTS[2]

**Prosecution Case**

On December 18, 2008, City of Bakersfield Police Officer Eric Shimon and other officers assigned to the Kern County Narcotics enforcement team went to a hotel in Bakersfield for the purpose [of] conducting an investigation of [Petitioner's] activities. Upon arriving the officers learned that [Petitioner] had rented room 235 (the room). The officer thereupon conducted a surveillance of the hotel, during which they observed the following: Nombrano left the room. Shortly thereafter, he unlocked a Ford Mustang automobile (the car) that was parked in the parking lot. The officers were aware from a check of police records that on several occasions police had made contact with [Petitioner] when she was driving the car. Nombrano entered the car on the driver's side, placed some items in the passenger compartment of the car, and then placed other items in the trunk. He then returned to the room. Some time later, [Petitioner] and Nombrano left the room together.

At that point, Officer Schimon identified himself as a police officer, and told [Petitioner] he wanted to talk to her about narcotics transactions at the hotel. [Petitioner] walked over to the officer, and he told her he suspected her of being involved in narcotics transactions at the hotel. He asked [Petitioner] for proof of identity and, while [Petitioner] was looking in her purse, asked her if he could search the purse. [Petitioner] handed it to him.

---

[2] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit A, of the Answer to the Petition for Writ of Habeas Corpus-which is presumed correct. 28 U.S.C. § 2254(e)(1).

Inside the purse, Officer Schimon saw a small black velvet bag with a cinched top. He removed the velvet bag from the purse, at which point [Petitioner] stated, "that's my medicine." The officer asked "what kind of medicine." [Petitioner] responded that it was "just my medicine." Inside the velvet bag, Officer Schimon found three plastic baggies containing what the officer recognized as methamphetamine. Later, he found $733.00 in currency in the purse, and in a search of the trunk of the car he found another purse containing $9,300.00 in currency.

Officer Schimon testified that at the point he began handling the velvet bag, Nombrano, who was standing with another officer, approximately 15 feet away, stated "that stuff[] mine." Officer Schimon testified further that later that same day, he questioned Nombrano, and Nombrano stated that the drugs found in the velvet bag were not his and he "didn't know where they came from."

Nombrano, testifying on his own behalf, on direct examination testified to the following: He saw Officer Schimon open [Petitioner's] purse and remove from the purse "a little velvet Baggie." When he saw the "Baggie," he said, "that belongs to me." This was not true. He only said so because he had a "relationship" with [Petitioner], he did not want [Petitioner] to "get in trouble," and he wanted to "protect her." He did not know what was in the velvet bag until Officer Schimon "took it out." He did not put anything in [Petitioner's] purse.

Nombrano was asked on cross-examination by [Petitioner's] counsel: "You were told that if you testified and your testimony was the same as what was in the police report that they were going to dismiss your case. Correct?" Nombrano answered, "Yes."

[Petitioner] did not testify.

**Motion for New Trial**

In support of her motion for new trial, [Petitioner] submitted the declaration of her trial counsel, Joe W. Whittington, in which Whittington averred, in relevant part, as follows: "After the conclusion of the trial, it came to my attention that Mr. Nombrano was a defendant in a misdemeanor action (BM749107A) in which he entered nolo pleas to forgery (Penal Code section 470[,] [subd.] (d), possession of controlled substance paraphernalia (Health & Safety Code section 11364 and destroying or concealing evidence"; [FN1] court records showed that the complaint in the case was filed April 1, 2009, and Nombrano entered his pleas on July 28, 2010; and "[h]ad I known of these charges ..., I would have impeached Mr. Nombrano as two of these misdemeanors are crimes of moral turpitude."

FN1. Counsel's reference to "destroying or concealing evidence" is an apparent reference to Penal Code section 135, which provides: "Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor."

At the hearing on the motion, the court took judicial notice that "at the time of the trial in this case there was pending charges against Mr. Nombrano in BM749107A, which accused him of crimes of moral turpitude." [FN2]

3

> FN2. The court also took judicial notice of what is apparently a single document related to the pending charges. This document has not been made part of the record on appeal.

(Court of Appeal Opinion, Ex. A at 2-5.)

## DISCUSSION

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.  Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an

explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

### III. Prosecution Suppression of Evidence

Petitioner contends that her due process rights under Brady were violated because she was denied: (a) information demonstrating that Mr. Nombrano was facing misdemeanor charges for crimes of moral turpitude at the time he testified; and (b) evidence consisting of several small plastic baggies found in Mr. Nombrano's possession that Petitioner claims was "drug trafficking" evidence.

#### A. Court of Appeal Decision on Direct Appeal

On direct appeal, the California Court of Appeal denied the claim in the last reasoned decision, stating:

> [Petitioner] contends the prosecution violated its duty under the due process clause of the United States Constitution to disclose evidence that would have enabled [Petitioner] to impeach Nombrano. Specifically, [Petitioner] faults the prosecution for not disclosing (1) the fact that pending against Nombrano at the time of trial were misdemeanor charges of forgery and concealing and/or destroying evidence, and (2) "materials" relating to, and constituting evidence of, the conduct underlying those pending charges, and (2) "materials" relating to, and constituting evidence of, the conduct underlying those pending charges, such as police reports and the names and addresses of witnesses. [FN3] [Petitioner] argues that Nombrano's testimony was crucial to the prosecution, and that "[i]f the jury had known that Nombrano was facing crimes of moral turpitude, exhibiting dishonest and lack of veracity, they quite easily could have determined that he was lying...."
>
> FN3. We refer to this second category of evidence as the underlying conduct evidence.
>
> [Petitioner] bases her claim on *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). In that case, the United States Supreme Court held that under the due process clause of the Fourteenth Amendment to the United States Constitution, the prosecution must disclose to the defense any evidence that is "favorable to the accused" and is "material" as to either guilt or punishment. (*Brady*, at p. 87.) Thus, there are three components to a successful claim under *Brady*: "[T]he defendant [] must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." (*United States v. Jackson* (7th Cir. 1986) 780 F.2d 1305, 1308.) We address these components in that order.
>
> *Did the Prosecution Suppress Evidence?*
>
> In order for this component of a *Brady* violation to be established, the evidence at issue must have been suppressed by the state, either willfully or inadvertently." (*Strickler v. Greene* (1999) 527 U.S. 263, 282 (*Strickler*).) The

6

scope of a prosecutor's duty to disclose "extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence known to the others acting on the government's behalf....'" (*In re Brown* (1998) 17 Cal.4th 873, 879.) We assume without deciding that, as [Petitioner] argues but the People dispute, the prosecution suppressed both the fact of the pending misdemeanor charges and the underlying conduct evidence.
Was the Suppressed Evidence Favorable?

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence...." (*Napue v. Illinois* (1959) 360 U.S. 264, 269.) Thus, evidence favorable to the accused "encompasses impeachment evidence as well as exculpatory evidence[ ] [citation]." (*Strickler*, *supra*, 527 U.S. at p. 280; accord, *In re Sassounian* (1995) 9 Cal.4th 535, 544 ["[e]vidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses"]; *People v. Ashraf* (2007) 151 Cal.App.4th 1205, 1214 (*Ashraf*) ["evidence tending to impeach the credibility of a prosecution witness may be deemed favorable to the defense under *Brady*"].)

As indicated above, [Petitioner] refers to two categories of undisclosed evidence: (1) the fact of the pending misdemeanor charges; and (2) the underlying conduct evidence. We analyze each category separately.

As to the first category, trial counsel averred, and the court took judicial notice, that at the time of trial there were pending against [Nombrano] misdemeanor charges of forgery and concealing or destroying evidence. Thus, the record supports the claim of these pending charges. And, there is no dispute that the fact of these charges was relevant for impeachment purposes and therefore constituted evidence favorable to [Petitioner] under *Brady*. It is well established that a prosecution witness can be impeached by the mere fact of pending charges. (*People v. Coyer* (1983) 142 Cal.App.3d 839, 842.) Such a situation is a "circumstance to show that [the witness] may, by testifying, be seeking favor or leniency. [Citations.]" (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation, § 271, p. 343.) Therefore, the evidence of the fact of the pending charges constituted favorable evidence under *Brady*.

As to the second category, we recognize that although a misdemeanor conviction constitutes inadmissible hearsay, at the trial court's discretion, "evidence of the underlying *conduct* may be admissible" to impeach the witness (*People v. Chatman* (2006) 38 Cal.4th 344, 373) since "[m]isconduct involving moral turpitude may suggest a willingness to lie" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295 (*Wheeler*), superseded by statute on other grounds as stated in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459). And, there is no dispute, and we conclude, that forgery and concealing or destroying evidence are crimes of moral turpitude. (*People v. Parrish* (1985) 170 Cal.App.3d 336, 349 [forgery is a crime of moral turpitude].)

However, "to determine whether evidence that was not disclosed to the defense was favorable and material under *Brady*, we must have some idea of what that evidence was." (*Ashraf, supra,* 151 Cal.App.4th at p. 1212.) Here, the record contains no information on the conduct underlying the charges in question. The situation presented is similar to that in *People v. Letner* and *Tobin* (2010) 50 Cal.4th 99 (*Letner* and *Tobin*). In that case, the prosecution failed to disclose one of its witnesses had an outstanding warrant for petty theft and, in a second case, had pleaded guilty to misdemeanor theft and writing a bad check, but "the record fail[ed] to provide [the reviewing court] with any information concerning the facts

underlying [the government witness's] offenses." (*Id*. at p. 178.)  In rejecting the defendants' *Brady* claim, the court stated "[the] defendants' bare allegation that the offenses themselves would have had value in impeaching [witness's] testimony [was] unsupported." (*Letner* and *Tobin*, at p. 178.)  In a similar vein, the court in Ashraf stated that the defendants "cannot point to anything in the undisclosed reports they could have used to impeach [prosecution witnesses], and mere speculation that there *might have been* something useful for impeachment purposes in those reports is not sufficient to demonstrate a *Brady* violation." (*Ashraf*, at p. 1214.)  On this record, [Petitioner] has not established that the facts underlying the charges pending against Nombrano had any impeachment value.  Therefore, [Petitioner] has not established that the underlying conduct evidence was favorable under *Brady*.

*Was the Suppressed Evidence Material?*

We turn now to the question of whether the fact of the pending charges was material.  "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (*Kyles v. Whitley* (1995) 514 U.S. 419, 433.)  "'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' [Citation.]" (*People v. Fauber* (1992) 2 Cal.4th 792, 829.)  As this court has described it, "'[m]ateriality ... requires more than a showing that the suppressed evidence would have been admissible [citation], that the absence of the suppressed evidence made conviction "more likely" [citation], or that using the suppressed evidence to discredit a witness's testimony "might have changed the outcome of the trial" [citation].  A defendant instead "must show a 'reasonable probability of a different result.'" [Citation.]' [Citation.] ... The requisite "reasonable probability" is a probability sufficient to "undermine [] confidence in the outcome" on the part of the reviewing court. [Citations.] It is a probability assessed by considering the evidence in question under the totality of the relevant circumstances and not in isolation or in the abstract. [Citation.]" (*In re Sodersten* (2007) 146 Cal.App.4th 1163, 1225.)  "[T]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." (*United States v. Agurs* (1976) 427 U.S. 97, 108.)

Under some circumstances, of course, impeachment evidence may be material under the principles summarized above.  However, undisclosed impeachment evidence is not material under *Brady* if it would not have added significantly to the cumulative impact of other impeachment evidence already presented.  (*People v. Dickey* (2005) 35 Cal.4th 884, 907-909 (*Dickey*).)  For example, in *Dickey*, the defendant claimed that an effort by one of two key prosecution witnesses to obtain leniency in a separate prosecution was material impeachment evidence under *Brady*.  (*Dickey*, at pp. 907-908.)  The Supreme Court ruled that, although the evidence was impeaching, it was not material because "it would have added little to the cumulative impact of the other impeachment evidence." (*Id*. at p. 908.)  The jury already knew that the witness disliked the defendant, wanted a reward associated with turning defendant in to the authorities, had made inconsistent statements about whether he was motivated by the reward, and was a drug user. (*Ibid*.)  In light of this other impeaching evidence, the court concluded that it was not reasonably probable that the new impeachment evidence would have "fatally undermined" the jury's confidence in the witness's testimony. (*Id*. at pp. 908-909.)

8

Here too, the undisclosed evidence in question was favorable because pending-charges evidence can be used to support the claim that the witness's motivation in testifying is to obtain favoritism and/or leniency. However, the jury heard evidence going to the same point.

As already indicated, the People presented police testimony that Nombrano made contradictory statements to the police regarding ownership and knowledge of the methamphetamine found in the black velvet bag in [Petitioner's] purse: First, upon observing the police removing methamphetamine from [Petitioner's] purse, he volunteered that the contraband was his, but when questioned by police later, after presumably having had the opportunity to reflect on the matter, he reversed his field and incriminated [Petitioner] by denying ownership, as well as any knowledge, of the contraband. On direct examination, Nombrano testified in a manner consistent with the second account he gave police. However, on cross-examination, he testified that the prosecution told him that if he testified consistent with his second statement to police, the felony charge against him of possession of methamphetamine for purposes of sale would be dismissed. This arrangement, as [Petitioner's] trial counsel argued to the jury, constituted compelling impeachment evidence because it showed that Nombrano had an extremely strong incentive to testify as he did: the prospect—indeed, the certainty—of the dismissal of a felony charge. Because the jury heard this evidence, other evidence which supported the inference that he might testify in a way calculated to obtain leniency or other favorable treatment with respect to the pending misdemeanor charges would have been merely cumulative. Therefore, the evidence of the fact of the pending charges was not material.

[Petitioner] suggests that if the prosecutions' offer to dismiss the felony charge if Nombrano testified he knew nothing of the contraband renders the undisclosed evidence immaterial, there has been a denial of [Petitioner's] due process rights amounting to a "travesty of justice" because, [Petitioner] asserts, the prosecution "essentially bought Nombrano's testimony[,]" thereby "corrupti[ng] the truth-finding process...." We disagree.

The record reveals nothing more than a common plea agreement in which the prosecution agreed to dismiss charges in exchange for testimony. Such an agreement would raise due process concerns if the prosecutor conditioned such a benefit, or any benefit, on untruthful testimony, but there is absolutely no indication of that here. Indeed, the prosecutor, in his cross-examination of Nombrano regarding the effect of the plea agreement, pointedly asked Nombrano if he understood he was under oath and that it was "a crime to tell a lie under oath[.]"

As best we can determine, [Petitioner] suggests Nombrano's plea agreement violated her due process rights because Nombrano had an extremely strong incentive to testify in a way that incriminated [Petitioner]. However, any time the opportunity is presented to obtain a benefit in exchange for testimony, there is put forth an inducement for that testimony. That the inducement in Nombrano's case was substantial does not establish that [Petitioner's] due process rights were violated.

Finally, although, as demonstrated above, [Petitioner] has not established the underlying conduct evidence was favorable, we note, in addition, that it follows from the fact that the record tells us nothing about the conduct underlying the pending charges that [Petitioner] has also failed to demonstrate that the underlying conduct evidence was material. Moreover, it is not obvious that the trial court would have allowed evidence of the conduct on which the misdemeanor charges

were based. As the court in *Letner* and *Tobin* stated, "we ... take note ..., with reference to the underlying *facts* of misdemeanor offenses, that the trial courts retain the authority to exclude certain evidence under section 352 of the Evidence Code if presentation of those facts would create undue prejudice, delay, or confusion, substantially outweighing their probative value. (*Wheeler*, at pp. 296-300.) ... In addition, ..., 'a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonest than is a felony.'" (*Letner* and *Tobin*, *supra*, 50 Cal.4th at p. 178.)

As indicated above, in *Letner* and *Tobin* the record contained no information regarding the facts underlying the government witness's offenses. In rejecting the defendants' *Brady* claim, the court held the defendants had failed to meet the materiality requirement: "In sum, defendants have failed to demonstrate that there is a reasonable probability that had the prosecutor disclosed to defendants the then-pending criminal matters facing [the government witness] before the prosecution called her as a witness, the jury would have reached a result more favorable to defendants. Accordingly, defendants have not established that their constitutional rights were violated." (*Letner* and *Tobin*, *supra*, 50 Cal.4th at p. 178.) Here too, where the record tells us nothing about the conduct underlying the misdemeanor charges pending against Nombrano at the time of trial, [Petitioner] has not established that such conduct was material under *Brady*.

On this record, then, we conclude [Petitioner] has failed to demonstrate that the evidence of the fact of the pending misdemeanor charges was material or that the underlying conduct evidence was either favorable or material. Therefore, [Petitioner's] claim of *Brady* error fails.

B.   Superior Court Decision on Collateral Review

In a later decision, the state superior court denied Petitioner's Brady claim on state habeas corpus review as procedurally barred under In re Waltreus, 62 Cal.2d 218, 225 (1965), which holds that a claim raised on direct appeal may not be subsequently raised in state habeas petition. (Ex. B at 3.) This state procedural ruling does not bar federal habeas review because "[a] *Waltreus* denial is neither a ruling of procedural default nor a ruling on the merits. *Waltreus* merely bars relitigation in state habeas proceedings of claims already litigated on direct appeal." Carter v. Giurbino, 385 F.3d 1194, 1198 (9th Cir. 2004).

C.   Supplemental Exhibits

Petitioner filed a state habeas corpus petition in the state superior court and a separate petition in the California Court of Appeal in case number F063806. After filing the petition in the appellate court, Petitioner submitted three supplemental exhibits in support thereof. The exhibits consisted of: (1) a complaint showing that Mr. Nombrano was charged with forging a check in violation of California Penal Code section 470(b), a misdemeanor; possession of paraphernalia for

injecting or smoking a controlled substance, in violation of California Health and Safety Code section 11364, a misdemeanor; and destroying or concealing evidence in violation of California Penal Code section 135, a misdemeanor; (2) a register of actions to show that Mr. Nombrano pleaded nolo contendere to the three offenses listed above; and (3) related documents from the Bakersfield Police Department. Petitioner litigated her Brady claim by way of a motion for new trial; however, the police report was not part of the record before the state courts on direct appeal.

###    D.    Last Decision of State Court

Petitioner appears to argue that the California Court of Appeal could not have accurately determined whether the suppressed evidence was material and favorable without a review of the police reports. As this is the basis of Petitioner's claim in the instant federal petition, which was not presented until the filing of the habeas petition in the California Court of Appeal, this Court must look to the last decision which considered this claim (as supported by the additional exhibits)-the California Supreme Court's summary denial.[3] Where a state court decided petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record ... to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002). In this circumstance, Petitioner must show "there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Harrington v. Richter, 131 S.Ct. at 784. This Court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holdings in a prior decision of [the Supreme Court]." Id. at 786.

---

[3] Although the Court must normally look to the last reasoned decision, there was no reasoned decision issued considering the addition of the police reports as both state courts that considered the claim issued summary denials.

E.   Analysis

Under clearly established federal law, a prosecutor's suppression of evidence favorable to a defendant violates due process. Brady v. Maryland, 373 U.S. 83 (1963); see also Killian v. Poole, 282 F.3d 1204, 1210 (2002) ("If exculpatory or impeachment evidence is not disclosed by the prosecution and prejudice ensures, a defendant is deprived of due process. . . . Prejudice is determined by looking at the cumulative effect of the withheld evidence and asking 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'") (citing, inter alia, Brady, 373 U.S. 83 and Strickler v. Greene, 527 U.S. 263, 290 (1999)). There are three components to establish a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." U.S. v. Price, 566 F.3d 900, 907 (9th Cir. 2009) (citing Strickler, 527 U.S. at 281-282); see also Banks v. Dretke, 540 U.S. 668, 691 (2004). A petitioner must show prejudice to satisfy the materiality inquiry. Strickler, 527 U.S. at 282.

Even if it is assumed that the prosecution suppressed evidence, a review of the record in this case supports the state court's denial of this claim because such evidence was not material under Brady. The evidence Petitioner points to is 30 three inch by three inch zip-top coin bags which the police report describes as commonly used for the distribution of narcotics.[4] (Police Report, Lod. Doc. 16, Ex. F at 4.) Although experts commonly testify that individuals engaged in the sale of drugs will often use plastic baggies for packaging, the mere presence of baggies at Nombrano's residence does not, by itself, establish that he was selling drugs. There was no other indicia found at Nombrano's residence to support the conclusion that he was selling drugs such as scales, pay-owe sheets, cash, firearms, or drugs. (Police Report, Lod. Doc. 16, Ex. F.)[5] The only other evidence found at Nombrano's residence was one used methamphetamine pipe and one

---

[4] It does not appear that the discovery of the baggies resulted in any charges.

[5] A "narcotics detention canine partner" sniffed the residence and did not detect the presence of narcotics. (Ex. F. at 6, Lod. Doc. 16.)

12

broken pipe. (Police Report, Lod. Doc. 6, Ex. F at 5-6.) Mr. Nombrano admitted that he tried to destroy the pipe to avoid being arrested for possessing it.

While this evidence may have had some impeachment value, it would have been cumulative of impeachment evidence already presented at trial and thus there is no prejudice. See e.g. Williams v. Woodford, 384 F.3d 567, 599 (9th Cir. 2004) (where impeachment evidence is cumulative of evidence presented at trial, and the impeachment evidence would not cast the witness in a significantly worse light, there is no reasonable probability that the proceedings would have been different); Schad v. Ryan, 671 F.3d 708, 715 (9th Cir. 2011) (court will be "less likely to find withholding of impeachment material prejudicial in cases in which the undisclosed materials would not have provided the defense with a new and different form of impeachment."). At trial, there was evidence presented that Nombrano made conflicting statements to the police regarding ownership and knowledge of the methamphetamine found in the black velvet bag in Petitioner's purse. (CT 408-409.) He initially volunteered that the drugs belonged to him and then later denied ownership and knowledge of the drugs. (Id.) On direct examination, Nombrano testified that he did not own the drugs and had no knowledge of the contraband. (CT 408-411.) On cross-examination, he acknowledged that the prosecution told him the felony charges against him of possession of methamphetamine would be dismissed in exchange for his testimony against Petitioner. (CT 415, 431-434.) Defense counsel argued to the jury that dismissal of the charges in exchange for Nombrano's testimony constituted compelling impeachment evidence as it showed a strong incentive to testify as he did. (CT 549-554.) In light of this evidence, other evidence which supported an inference that he may provide testimony to gain leniency or other favorable treatment with respect to pending misdemeanor charges would have been cumulative. Put simply, the additional evidence did not paint a different light of Nombrano than that presented at trial.

Because there is no showing that a reasonable jury would have had a "significantly different impression" of Nombrano's credibility had she impeached him with the alleged drug trafficking evidence, Petitioner has not shown a violation of her due process rights. In sum, Petitioner has not demonstrated that the prosecutor's failure to disclose evidence that was favorable to the Petitioner's defense was material. Thus, the Court concludes that the state courts'

denial of this claim was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254. Accordingly, habeas corpus relief is foreclosed.

IV.     Ineffective Assistance of Counsel

Petitioner contends that trial counsel rendered ineffective assistance by failing to investigate Mr. Nombrano's criminal history and discover the pending misdemeanor charges in case number BM749107A.

Petitioner did not raise this claim in the motion for new trial or on direct appeal. However, trial counsel authored a declaration for the motion for a new trial indicating his knowledge of the pending charges in case number BM749107A and he testified at the hearing. (CT 689-692; Lod. Doc. 3; RT 187-188, Lod. Doc. 7.)

This claim was not raised until the filing of the state habeas corpus petition in the Kern County Superior Court. Both the Court of Appeal and the California Supreme Court summarily denied the claim. Thus, the Superior's Court denial of the claim is the last reasoned decision.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; Harrington v. Richter, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom."). Judicial scrutiny of counsel's performance is highly deferential. A

court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

The failure to investigate constitutes deficient performance when the defense attorney "neither conduct[s] a reasonable investigation nor ma[kes] a showing of strategic reasons for failing to do so." Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

This claim is essentially a repackaged Brady claim. In his declaration, counsel declared "[b]efore the trial and during the trial I acted under the assumption that the prosecution would disclose any exculpatory evidence under *Brady v. Maryland* as well as in compliance with the general standing order of discovery granted at arraignment which also encompasses exculpatory evidence." (CT 696, Lod. Doc. 3.) As discussed above in connection with Petitioner's Brady

15

claim, whether or not Nombrano had pending misdemeanor charges was cumulative and could not have had a material impact on the outcome of the case. Nombrano's contradictory statements about the ownership of the methamphetamine (the central issue at trial) certainly had more impact on the jury than the mere fact that he may have been guilty of forgery or destroying or concealing evidence. Furthermore, Nombrano's motivation to lie to save himself from the same charges for which Petitioner was facing was stronger evidence to diminish his credibility than the fact he may have tried to steal something by forging checks or destroying or concealing evidence. Moreover, the jury was specifically instructed with CALCRIM No. 105, which stated, in pertinent part:

> Now, you alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standard setting aside any bias or prejudice you may have. You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe. In evaluating a witness's testimony you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony.
>
> Among the factors that you may consider are how well could the witness see, hear, or otherwise perceive the things about which the witness testified? How well was the witness able to remember and describe what happened? What was the witness's behavior while testifying? Did the witness understand the questions and answer them directly? Was the witness's testimony influenced by a factor such as bias, or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided? What was the witness's attitude about the case or about testifying? Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony? How reasonable is the testimony when you consider all the other evidence in the case? Did the evidence prove or disprove any fact about which the witness testified? *Did the witness admit to being untruthful*? *Was the witness promised leniency in exchange for his or her testimony*?
>
> . . . .
>
> If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or if you think the witness lied about some things, but told the truth about others, you may simply accept the part you think is true and ignore the rest.

(CT 533-534; CALCRIM No. 105, emphasis added.) Given there is no evidence to the contrary, this Court must presume the jury followed these instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (noting that "almost invariable assumption of the law that jurors follow their instructions"). In light of these circumstances, counsel's failure investigate and present such evidence did not prejudice Petitioner, and the state court's finding is not contrary to, or an

unreasonable application of Strickland.  See e.g. Davis v. Woodford, 384 F.3d 628, 641-642 (9th Cir. 2004) (finding defense counsel's failure to impeach a prosecution witness regarding his conviction for lying to a police officer did not prejudice defendant and no ineffective assistance was shown because counsel impeached the witness's credibility on several other grounds, the trial judge put the jury on notice that witness's credibility was at issue, and the jury would not likely have decided differently had it known the witness previously lied) (citing Strickland, 466 U.S. at 694).

V.     Right to Testify

Petitioner contends that defense counsel violated her constitutional right by preventing her from testifying.

In the last reasoned decision, the California Court of Appeal found the claim to be without merit and reasoned as follows:

*Background*

> [Petitioner's] trial counsel testified to the following at the hearing on [Petitioner's] motion for new trial: Prior to trial, attorney Whittington advised [Petitioner] of "the pitfalls of testifying on her own behalf," and he made a "tactical decision" not to call her to testify.  After the defense rested, and "as the Court was admonishing the jury," [Petitioner] told Whittington she wanted to testify.  Whittington "said no."  He did not ask "if [he] could reopen [the] case and have [Petitioner] testify" because he "thought it was tactically the best thing not for her to testify and that is the reason [he] didn't say anything to the judge about re-opening the case."

*Analysis*

> . . . . . . . .
>
> Here, although it is undisputed that [Petitioner] expressed to counsel her desire to testify, it is also undisputed that [Petitioner] did not express that desire to the court until well after the verdict.  Therefore, her claim fails. (*People v. Alcala*, *supra*, 4 Cal.4th at pp. 805-806.)

First, defense counsel acknowledged that he discussed the consequences of Petitioner testifying at trial, and tactically decided that she should not testify.  It was not until after the close of evidence that Petitioner expressed her desire to testify of which counsel again tactically determined was not beneficial and did not inform the trial court because of such determination.  Instead of immediately seeking recourse, Petitioner did not inform the trial court of her desire to

testify until well after she received an unfavorable verdict and could not have done worse had she testified. Petitioner has not cited nor has this Court found any clearly established Supreme Court authority that squarely holds a state court may not require a defendant to timely assert the right to testify or thereby waives it,[6] and absent such clearly established authority relief is foreclosed under section 2254.

## VI.    Certificate of Appealability

The requirement that a petitioner seek a certificate of appealability is a gate-keeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues, while at the same time affording petitioners an opportunity to persuade the Court that, through full briefing and argument, the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). However, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>>
>> (B) the final order in a proceeding under section 2255.

---

[6] In fact, at least one federal appellate court has found the opposite. See United States v. Jones, 880 F.2d 55, 59-60 (8th Cir. 1989) ("The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing only a minor limitation on the right, the rule promotes both fairness and order in trials, interests which, of course are crucial to the legitimacy of the trial process. In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion. And consonant with the Supreme Court's admonition in Rock, the rule is not 'arbitrary or disproportionate to the purposes [it is] designed to serve.'" [citing Rock v. Arkansas, 483 U.S. at 57, footnote omitted].)

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Accordingly, final orders issued by a federal district court in habeas corpus proceedings are reviewable by the circuit court of appeals, and, in order to have final orders reviewed, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253. This Court will issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find it debatable that Petitioner has failed to show an entitlement to federal habeas corpus relief. Accordingly, the Court declines to issue a certificate of appealability.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and

3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   December 26, 2012                        /s/ Barbara A. McAuliffe
                                                  UNITED STATES MAGISTRATE JUDGE